Case 1:18-cr-00032-DLF Document 139 Filed 06/05/19 Page 1 of 16
Case 1:23-mc-00040-LKG Document 12-18 Filed 02/10/23 Page 1 of 16

EXHIBIT "17"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CONCORD MANAGEMENT AND CONSULTING LLC,<br><br>Defendant. | Crim. No. 18-CR-32-2 (DLF)<br><br>FILED UNDER SEAL |

### GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S MOTION TO SHOW CAUSE

The United States of America respectfully submits this supplemental brief regarding the motion to show cause filed by defendant Concord Management and Consulting LLC. This filing addresses the following questions set forth in the Court's Order dated May 29, 2019: (1) whether the Court should defer consideration of the motion until after trial; (2) if the Court finds a violation of Local Criminal Rule 57.7(b), whether the Court has discretion to decline to initiate contempt proceedings and instead address the violation through alternative means; and (3) what terms the Court should include in any order restricting extrajudicial statements of the parties and counsel pursuant to Local Criminal Rule 57.7(c). For the reasons set forth below, the government believes that the Court should defer further proceedings on the defendant's motion to show cause until the trial in this case has concluded in order to protect a fair trial and the due administration of justice. Further, should the Court find a violation of Local Rule 57.7, the Court need not and should not initiate a contempt proceeding. Finally, the government does not oppose a Court order restricting extrajudicial statements of the parties and attorneys consistent with the requirements of Local Rule 57.7.

1

## BACKGROUND

On March 22, 2019, Special Counsel Robert S. Mueller, III submitted his confidential report to the Attorney General pursuant to 28 C.F.R. § 600.8(c). Thereafter, the Attorney General determined that the public interest warrants as much transparency as possible, consistent with the law, regarding the results of the Special Counsel's investigation. The Attorney General released the report to the public and Congress to the maximum extent possible, subject only to redactions for the following: (1) material subject to Federal Rule of Criminal Procedure 6(e); (2) investigative techniques which reflect material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, as well as information that could harm ongoing intelligence or law enforcement activities; (3) information that, if released, could harm ongoing law enforcement matters, including charged cases where court rules and orders bar public disclosure by the parties of case information; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties.

Redaction decisions were made in consultation with various Justice Department components, including experts within the Department on professional responsibility obligations, the Office of the Deputy Attorney General, the Special Counsel's Office, the National Security Division and the intelligence community, and the relevant U.S. Attorney's Offices, including the U.S. Attorney's Office for the District of Columbia. These decisions were made in the context of intense public and congressional interest in the release of as much of the Special Counsel's report as possible consistent with the Department's legal obligations.

With respect to the section of the report discussing the conduct alleged in this case, the Department did consider the application of Local Criminal Rule 57.7(b), and significant portions

of the report discussing case information in this case were redacted based on the principles described above (including information "where court rules and orders bar public disclosure by the parties of case information"). In the Department's view, the unredacted information in the report relating to this case largely tracks the allegations set forth in the Indictment, and therefore the public disclosure of that information would not interfere with a fair trial or otherwise prejudice the due administration of justice.

## ARGUMENT

### A. The Court Should Defer Further Proceedings on the Defendant's Motion.

The government believes that no further proceedings on the defendant's motion to show cause are warranted. Should the Court disagree, the government submits that it would be appropriate to defer those proceedings until after the conclusion of the trial in this case.

In making decisions on the redaction of information from the public version of the Special Counsel's report, the Department considered the application of Local Criminal Rule 57.7 to this case. As relevant here, the rule imposes a duty "not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." L. Cr. R. 57.7(b)(1). The information that appears in the section of the public version of the report related to this case largely tracks the allegations set forth in the Indictment. To the extent that the unredacted material or the Attorney General's other statements go beyond what is already in the Indictment, the government does not believe that such information poses a

"reasonable likelihood" of interfering with a fair trial or otherwise prejudicing the due administration of justice.

As the government argued in its opposition to the defendant's motion to show cause and at the motions hearing, the public version of the report does not state that the Russian government participated in the activities of the Internet Research Agency ("IRA"). Further, the single sentence that the defendant excerpts from hundreds of pages of testimony by the Attorney General does not create a reasonable likelihood of interfering with a fair trial. That is particularly true in light of the Attorney General's March 28, 2019 letter to Congress setting forth the principal conclusions of the Special Counsel's investigation, which distinguished between the activities alleged in the *Netyksho* indictment (in which the Russian government is alleged to have participated) and the activities alleged in the Indictment in this case (in which the Russian government is not alleged to have participated).

Similarly, the sentence on page 35 of Volume I of the report stating that the "investigation established" that the IRA interfered in the 2016 presidential election did not violate Rule 57.7. In February 2018, the Special Counsel's Office presented the Indictment in this case to the grand jury, a fact that was made public upon the grand jury's return of the Indictment. In light of that action, it should come as no surprise that the Special Counsel's Office believed that its investigation uncovered evidence that "established" the allegations in the Indictment. *See* Justice Manual § 9-27.220 (2018) (providing that the government can commence a prosecution only if the government believes that the defendant's conduct constitutes a federal offense and "the admissible evidence will probably be sufficient to obtain and sustain a conviction"). Therefore, a single sentence in the report to that effect is not reasonably likely to interfere with a fair trial or otherwise prejudice the due administration of justice.

Moreover, the risk of prejudice must be evaluated in context.  The handful of sentences that Concord has focused on are part of a two-volume report that spans approximately 400 pages (plus appendices), or part of many hours of congressional testimony and other communications. Needless to say, given the breadth of issues addressed in the report and testimony and the media's attention to any number of other parts of the Special Counsel's investigation, the juxtaposition of references to the Russian government and the IRA, and the use of the word "established" will not result in any prejudice to Concord.  Moreover, at the time the Department released the public version of the report, no trial date had been set in this case.  "[T]he timing of a statement [is] crucial in the assessment of possible prejudice" of a public extrajudicial statement.  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1044 (1991) (plurality op.).  (where comments preceded trial by six months, "only the most damaging information could give rise to any likelihood of prejudice").  While a statement made close in time to trial might "complicate the jury selection process," the same statement made months before trial "would not result in prejudice" because it will likely "fad[e] from memory long before the trial date."  *Id.*

However, if the Court does conclude that further proceedings on the defendant's motion are warranted, then the Court should conduct those proceedings after the trial in this case is concluded.  The Court correctly recognized at the May 28, 2019 hearing that further proceedings on this matter would exacerbate any risk of prejudice by potentially generating publicity on the very matters that are alleged to have been prejudicial.  *See* 5/28/19 Tr. 26, 35-36.  In particular, further steps on Concord's motion likely would focus media attention on specific statements about Concord and the other charged defendants.[1]  Moreover, *voir dire* would assist the Court in

---

[1]   At the May 28 hearing, counsel for Concord offered to "waive" any prejudice from further pretrial proceedings on the motion to show cause. 5/28/19 Tr. 36, 38-39. Even if defense counsel could "waive" any risk of prejudice to their client, as the Court recognized there is an independent

5

determining whether any prejudice actually resulted from the public release of the report. *See Gentile*, 501 U.S. at 1047 (noting that "[w]hile it is true that" an alleged violation of a rule restricting extrajudicial statements "must be judged at the time a statement is made, *ex post* evidence can have probative value in some cases," and describing the results of *voir dire* in overturning a finding of a violation). In addition, as discussed below, the government does not oppose further restrictions on pretrial public statements in this case.[2]

The government respectfully submits that the Court should defer any further proceedings for the additional reason that they may interfere in the parties' ability to prepare for trial. This case has been pending for over a year. The Grand Jury returned the Indictment on February 18, 2018, and counsel for Concord appeared on April 11, 2018. Concord filed several pretrial motions—including challenges to the Special Counsel's appointment, to the Indictment itself, to alleged selective prosecution, and to the grand jury instructions—and the Court expeditiously resolved the last of those motions in November of last year. (Concord filed a second motion for discovery regarding selective prosecution, which the Court denied on February 13, 2019.) The government respectfully suggests that in light of the paramount interest in moving this case to trial, any further proceedings on Concord's motion for an order to show cause be deferred until after the trial in this case.

---

obligation to "the due administration of justice." *Id.* at 36. Concord's (or its counsel's) apparent preference for immediate "punishment," *see id.* at 36-39, does not justify exacerbating any risk that has been created and calls into question whether any reasonable likelihood of prejudice existed in the first place.

[2] The portion of the Special Counsel's recent public statement that addressed the allegations in this case complied with the instructions set forth in the May 29 order. *See* Special Counsel Robert S. Mueller III Makes Statement on Investigation into Russian Interference in the 2016 Presidential election (May 29, 2019), *available at* https://www.justice.gov/opa/speech/special-counsel-robert-s-mueller-iii-makes-statement-investigation-russian-interference.

### B. The Court Can (And Should) Decline To Initiate Contempt Proceedings.

For the reasons set forth above, the government believes that no violation of Rule 57.7 has occurred. But even if the Court were to disagree, the Court has the discretion to decline to initiate contempt proceedings in favor of an alternative remedy or impose no sanction at all. Moreover, the Court should decline to initiate contempt proceedings and should impose no sanction because there was no willful violation of Rule 57.7, as required for criminal contempt.

"A contempt proceeding is either civil or criminal by virtue of its 'character and purpose.'" *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (citation omitted). Civil contempt typically is used to compel compliance with a court order or to compensate a complainant for pecuniary loss. *Id.* By contrast, criminal contempt "is used to punish, that is, to 'vindicate the authority of the court' following a transgression rather than to compel future compliance or to aid the plaintiff." *Id.* (citation omitted). Because the government is not refusing to comply with any order, and the defendant is not claiming any entitlement to compensation, the defendant's motion is a request to initiate criminal contempt proceedings.

"Criminal contempt is a crime in the ordinary sense." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826 (1994). The crime requires "willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court." 18 U.S.C. § 402; *see id.* § 401(3) (describing a district court's power to punish). And like any other crime, a person charged with committing criminal contempt is entitled to certain procedural protections that are afforded in any criminal proceeding. *See Bagwell*, 512 U.S. at 827; Fed. R. Crim. P. 42; *see, e.g., Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988) (proof beyond a reasonable doubt).[3]

---

[3] Criminal contempt proceedings do not have to be conducted in precisely the same way as ordinary criminal prosecutions. *See Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (describing criminal contempt as "an offense *sui generis*"); *see also Young v. United States ex rel. Vuitton et*

7

If a court wishes to initiate criminal contempt proceedings, it must provide notice to the putative defendant and then ask the government to prosecute the case or, in unusual circumstances, appoint a disinterested prosecutor. Fed. R. Crim. P. 42; *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793-809 (1987). "While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Id.* at 801 (internal quotations marks omitted). Criminal contempt proceedings are "initiated at the sole discretion of the court." *Brandt v. Gooding*, 636 F.3d 124, 135 (4th Cir. 2011); *see Xtreme Caged Combat v. ECC Fitness,* 2019 WL 1245162, at *2 (E.D. Pa. Mar. 15, 2019) ("It is within a federal court's power and discretion to hold a defendant in criminal contempt."); *Hake v. Carroll County, Md.*, 2014 WL 2047448, at *2 (D. Md. May 15, 2014) (declining to "exercise…discretion to initiate criminal contempt proceedings"); *United States v. Lynch*, 952 F. Supp. 167, 172 (S.D.N.Y. 1997) (recognizing that courts "must and should have the broadest possible discretion to determine whether the conduct at issue is such that a finding of criminal contempt is necessary to vindicate its authority").

The Court not only can but also should decline to initiate criminal contempt proceedings here. As the D.C. Circuit has recognized, "contempt is a '*willful* disregard or disobedience of a public authority.'" *In re Brown*, 454 F.2d 999, 1007 (D.C. Cir. 1971) (quoting *Sykes v. United States*, 444 F.2d 928, 930 (D.C. Cir. 1971)) (emphasis in original); *In re Holloway*, 995 F.2d 1080, 1082 (D.C. Cir. 1993) ("[A]lthough § 401(3) does not explicitly mention *mens rea*,

---

*Fils S.A.*, 481 U.S. 787, 800-801 (1987). For example, contempts committed in the court's presence may be punished summarily, without the normal due process requirements applicable to ordinary crimes. *Pounders v. Watson*, 521 U.S. 982, 987-988 (1997) (per curiam); *see* Fed. R. Crim. P. 42(b).

8

wrongful intent is necessary. The disregard of authority must be willful."); 18 U.S.C. § 402. Accordingly, "[k]nowledge that one's act is wrongful and a purpose to nevertheless do the act are prerequisites to criminal contempt." *Id.* And "[g]ood faith pursuit of a plausible though mistaken alternative is antithetical to contumacious intent." *Id.*

Under this standard, criminal contempt would not be an appropriate remedy in this case. As discussed above, the Department did consider in good faith Local Rule 57.7 when making redactions to the section of the report discussing the conduct underlying the Indictment in this case. The Attorney General's correspondence with Congress about the categories of material redacted from the report shows that the Department made an effort to comply with Local Rule 57.7. *See* Letter from Attorney General William Barr to Chairman Lindsey Graham, Chairman Jerrold Nadler, Ranking Member Dianne Feinstein, and Ranking Member Doug Collins (Apr. 18, 2019), at 3 (noting that the Department made redactions to comply with orders "prohibiting public disclosure of information bearing upon ongoing investigations and criminal proceedings, including *United States v. Internet Research Agency LLC, et al.*") (Exh. A); *id.* (noting that the Department redacted information related to "charged cases where court rules and orders bar public disclosure by the parties of case information."). The Attorney General's correspondence also makes clear that the Department acted with a benign purpose. *See id.* at 1 ("I have determined that the public interest warrants as much transparency as possible regarding the results of the Special Counsel's investigation" and therefore "I have determined that the report should be released to the public and provided to Congress, subject only to those redactions required by the law or compelling law enforcement, national security, or personal privacy interests."). This contemporaneous documentation both of a good-faith effort to comply with the local rules in making redactions and of a benign purpose in making the public release negates

9

any inference that anyone in the Department acted with the wrongful intent necessary to establish criminal contempt. *See United States v. Koubriti*, 305 F. Supp. 2d 723 (E.D. Mich. 2003) (declining to initiate criminal contempt proceeding against Attorney General based on public statements made in violation of court order restricting extrajudicial statements of parties); *Brown*, 454 F.2d at 1007-08 (reversing criminal contempt conviction based on insufficient evidence of "contumacious intent" in violation of local rule).[4]

Even if the Court believed that a violation of the local rules occurred and further believed that there was any evidence suggesting a willful intent, the Court could (and should) decline to initiate contempt proceedings. Criminal contempt proceedings rest in the Court's sound discretion, and because "the judicial contempt power is shielded from democratic controls," this power should be "exercised with restraint." *In re Smothers*, 322 F.3d 438, 441-442 (6th Cir. 2003) (quotations omitted). Restraint is all the more important where, as here, the alleged violation was undertaken by senior Department officials who were working in good faith to be transparent about an investigation of extraordinary public interest and to respond to an ongoing national security threat

---

[4] In *Brown*, the D.C. Circuit suggested but did not decide that a violation of a standing rule might not be punishable as criminal contempt under 18 U.S.C. § 401(3). 454 F.2d at 1005-06. The Court noted that "every other directive" mentioned in subsection 3 "is one which is specifically addressed to a particular person or group and one which traditionally has been enforceable through the contempt power." *Id.* at 1006. Therefore, the Court reasoned, "it may be that the 'rule' to which subdivision 3 refers is the rule in the process sense—the rule to show cause, the rule nisi, and the like—rather than a general, standing rule of court, which usually draws its sanctions from other sources." *Id.*; *see also United States v. Kimsey*, 668 F.3d 691 (9th Cir. 2012) (interpreting parallel language in 18 U.S.C. § 402 not to include a violation of a local rule); *United States v. Minarik*, 1988 WL 24217 (6th Cir. 1988) (noting but not deciding the issue). Other courts have reached a contrary conclusion. *See, e.g.*, *United States v. Herrera*, 252 F.3d 1356 (5th Cir. 2001) (upholding criminal contempt conviction for violation of local rule and rejecting the argument that a willful violation of a local rule cannot be the basis for a conviction under Section 401). This Court need not decide that legal question here for the same reason the D.C. Circuit did not decide the question in *Brown*—there is no evidence of a willful violation of the rule at issue. If the Court were to reach a contrary conclusion, then the Court should order further briefing on this legal question.

by educating the public about threats of election interference.  *Cf. In re Attorney General of the United States*, 596 F.2d 58, 64-65 (2d Cir. 1979) (explaining the civil contempt order against the Attorney General, who is "the chief law enforcement officer of the nation [and] exercises powers entrusted to him by both the executive and legislative branches" should be a "last resort" and "has greater public importance, with separation of power overtones, and warrants more sensitive judicial scrutiny than such a sanction imposed on an ordinary litigant").

Criminal contempt is a severe finding, and even being the subject of a criminal contempt proceeding is extremely serious.  It is "a crime in the ordinary sense . . . for [its] impact on the individual defendant is the same" as that of any other crime.  *Bloom v. Illinois*, 391 U.S. 194, 201 (1968).  Consistent with the oft-repeated rule that courts should apply "the least possible power adequate to the end proposed," *Shillitani v. United States*, 384 U.S. 364, 370 (1966), criminal contempt "is sparingly to be used," *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911), and should be "reserve[d] [for] conduct acutely demanding it," *Brown*, 454 F.2d at 1006; *see, e.g., In re Morrissey*, 168 F.3d 134, 136-137 (4th Cir. 1999) (cited by Concord at Mot. 12) (repeated, public inflammatory statements after numerous warnings from the court); *In re Levine*, 27 F.3d 594, 595, 597 (D.C. Cir. 1994) (judge made "serious and repeated efforts to require a lawyer to abide by the judge's orders," attorney repeatedly ignored the judge's admonitions, and the record was "full of instances of . . . wholesale disobedience"); *see also Islamic Inv. Co. of the Gulf (Bah.) Ltd. v. Harper,* 545 F.3d 21, 25 (1st Cir. 2008) (in what the court called a "civil contempt" proceeding, the contemnor "must have violated a clear and unambiguous order that left no reasonable doubt," "any ambiguities . . . in such a court order must be read in a light favorable to the person charged with contempt," and "even if all of these conditions are satisfied, the trial court retains a certain negative discretion . . . to eschew the

11

imposition of contempt sanctions if . . . in the interests of justice in the particular case"). The government is acutely focused on the requirements of Local Criminal Rule 57.7(b). This Court's stated concerns have been communicated to Department leadership, and the government will exercise significant caution moving forward. In those circumstances, the government respectfully suggests that contempt proceedings are not warranted.

As suggested by the Court's May 29, 2019 order, other remedies—to the extent any remedy is necessary—are more appropriate to address any violation of Rule 57.7 in this case. Most importantly, if there is any possibility of prejudice to Concord, the government respectfully suggests that voir dire can be used to remove any prospective juror who may be improperly prejudiced by the statements that Concord has identified. *See Gentile*, 501 U.S. at 1055 (plurality opinion) (recognizing that "*[v]oir dire* can play an important role in reminding jurors to set aside out-of-court information and to decide the case upon the evidence presented at trial"); *United States v. Brown*, 218 F.3d 415, 431 (5th Cir. 2000) (noting that voir dire and jury instructions can be used "as tools for dealing with extensive pretrial publicity"); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."); *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991) (explaining that a trial judge's vigilance in voir dire is ordinarily capable of ferreting out bias and can be modulated to "the depth and extent of news stories that might influence a juror").

The Court additionally asked whether use of its "inherent disciplinary authority" is an appropriate alternative. District courts have inherent power to issue appropriate sanctions "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).

Although sometimes described as contempt, "[t]his power is distinct from the contempt power." *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008).  However, the government respectfully suggests that no disciplinary sanction is warranted in this case. "[T]he threshold for the imposition of such sanctions is high" and generally reserved only for "bad faith conduct."  *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1288 (Fed. Cir. 2000); *see, e.g., BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010); *Sanford v. Commonwealth of Virginia*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010) (the "misconduct required is almost always something more egregious than that required for other types of sanctions").[5]  And, as a general rule, a court imposing sanctions "must use the least restrictive sanction necessary to deter the inappropriate behavior."  *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002); *cf. United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947) ("In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future.").  No sanction is necessary or appropriate to ensure that the government will take great care moving forward to comply with Local Criminal Rule 57.7(b).[6]

---

[5] The government is aware of one court that declined to require a specific finding of "bad faith" for sanctions imposed pursuant to a local rule. *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016).

[6] If the Court were considering assessing any monetary sanction against the United States, the government respectfully requests the opportunity to brief whether sovereign immunity would prohibit the sanction. *See United States v. Horn*, 29 F.3d 754, 763-767 (1st Cir. 1994).

### C. The Government Does Not Oppose An Order Under Local Rule 57.7(c).

The government does not oppose an order in this case further restricting extrajudicial statements of parties and attorneys under Local Rule 57.7(c). Rule 57.7(c) provides, "In a widely publicized or sensational criminal case, the Court, on motion of either part or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury." The Supreme Court has upheld the restriction of extrajudicial speech of attorneys that poses a "substantial likelihood of material prejudice" to a pending case. *Gentile*, 501 U.S. at 1075. Accordingly, the government proposes that an order entered under Local Rule 57.7(c) in this case state, "Counsel for the parties are ordered to refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." The Court has entered such an order in another pending case arising out of the Special Counsel's investigation. Order, *United States v. Roger Stone*, No. 19-CR-00018, at 3 (filed Feb. 15, 2019) (Doc. 36).

The Court's May 29 order requested the parties' views on how such an order would apply to the report, "which has already been disseminated publicly in its current form and which may or may not be disseminated with certain redactions removed, pending the resolution of negotiations between the Department of Justice and Congress and various other court matters." Doc. 137, at 1. As the government noted in its supplemental filing on this motion, providing a minimally redacted version of the report for review by certain Members of Congress and their staff is not a statement "to the media or in public settings" and therefore would not be prohibited by an order using the language set forth above. The same would be true of any less redacted version of the report that the Department was ordered to provide to an individual defendant in a

14

criminal case. *See, e.g.*, Mot. To Compel, *United States v. Roger Stone*, No. 19-CR-00018 (filed Apr. 12, 2019) (Doc. 70). Before making a minimally redacted version of the report available for review by Members of Congress and their staff, the Department has advised those reviewing the report of the importance of refraining from making any public statement about redacted material related to pending cases, including this case. The Department will continue to follow that practice, and would make Members of Congress and their staff aware of any order entered in this case regarding extrajudicial statements. Finally, a Freedom of Information Act request for the unredacted report is pending before the Court. *Electronic Privacy Information Center v. United States Dep't of Justice*, No. 19-CV-810. The Department will advise the Court handling that lawsuit of any order entered by this Court under Local Rule 57.7(c). To the extent the Department considers removing any redactions to the report prior to further dissemination, the government would of course seek guidance from the Court before doing so.

Respectfully submitted,

JOHN C. DEMERS
Assistant Attorney General for National Security

By: /s/
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

JESSIE K. LIU
United States Attorney

By: /s/
Jonathan Kravis
Deborah Curtis
Kathryn Rakoczy
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, I caused a copy of the foregoing filing to be transmitted to Katherine Seikaly and Eric Dubelier, counsel of record for Concord Management and Consulting LLC, via email.

By: /s/
Jonathan Kravis
Assistant United States Attorney
555 Fourth Street NW
Washington D.C. 20530