IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

---------------------------------- X
                                   :
In re A. SCOTT BOLDEN              :   Case No.: 1:23-mc-00040-LKG
                                   :
---------------------------------- X

## DECLARATION OF RONALD S. SULLIVAN, JR.

I, Ronald S. Sullivan, Jr., pursuant to 28 U.S.C. § 1746, hereby declare and state as follows:

1. I am over the age of 18, make this Declaration based on my personal knowledge, and am competent to testify regarding the matters set forth herein.

2. I submit this Declaration in respect of A. Scott Bolden, whom I have known for the better part of a decade. I hold Scott in the highest regard and can attest to his character.

3. I am the Jesse Climenko Clinical Professor of Law Harvard Law School and serve as the faculty director of the Harvard Criminal Justice Institute and the Harvard Trial Advocacy Workshop.

4. Prior to joining Harvard's faculty, I was on the Yale Law School faculty where I won the award for outstanding teaching after my first year. Before my career as a law school faculty member, I served as the Director of the Public Defender Service for the District of Columbia. I also spent several years in private practice in two prominent Washington, D.C. law firms where I practiced white-collar criminal defense and complex commercial litigation.

5. In 2008, I served as Chair, Criminal Justice Advisory Committee for then-Senator Barack Obama's presidential campaign and subsequently served as a member of the National

Legal Advisory Group for the Barack Obama Presidential Campaign. I was then appointed Advisor to the Department of Justice Presidential Transition Team.

6. In 2014, I was tasked to design and implement a Conviction Review Unit ("CRU") for the newly elected Brooklyn District Attorney, the late Ken Thompson. The CRU, designed to identify and exonerate wrongfully convicted persons, quickly became regarded as the model conviction integrity program in the nation.

7. I am also a Governing Trustee for The Dana Farber Cancer Institute and a former member of the Committee for Public Counsel Services in Massachusetts.

8. I am a *Phi Beta Kappa* graduate of Morehouse College and the Harvard Law School, where I served as President of the Harvard Black Law Students Association and as General Editor of the Harvard BlackLetter Law Journal.

9. I first became aware of Scott long before I met him in person. He was an esteemed graduate of my alma mater, Morehouse College, and his reputation preceded him. As a younger graduate than he, I was aware of his trailblazing career, particularly when he was elected as Reed Smith's first black Managing Partner.

10. Scott and I got to know each other personally when I invited him to join the teaching faculty of Harvard Law School's Trial Advocacy Workshop. I am the faculty director of the workshop and, annually, I invite the country's top lawyers and judges (both federal and state) to teach in the Workshop, which is a three-week, three-credit-hour, intensive, soup-to-nuts, trial practice workshop. Each teaching faculty commits to one week at Harvard teaching and mentoring my students.

11. The selection process is rigorous, and I was honored to add Scott to my faculty. He is well respected among the teaching faculty and beloved by the students. His professionalism and

commitment to the trial process has never been questioned. Scott is the consummate professional, who serves honorably and capably at Harvard, year after year. I have had the opportunity to observe Scott interact with faculty and student, alike. There has never been any instance or report of behaving imprudently. To the contrary, Scott has been an exemplar of the good lawyer. He is a tremendous asset to the Harvard Law School and its students.

12. Scott's reputation and character are on display in other arenas, as well. I shall highlight one of particular import to me, and to scores of young lawyers around the country. As mentioned above, Scott's election to Managing Partner was a recognized by thousands of young black lawyers around the country. This sort of appointment is not commonplace and, in this sense, Scott was as much a symbol as a person. He represented what is possible via hard work and professionalism. He became a Representative Man in an Emersonian sense. He was a source of pride, of hope, of expectation, of possibility. This is the Scott Bolden whom I know and respect.

13. Based on the foregoing, the moment which occasions this Declaration is deeply troubling. Scott is a good, respected, respectful, inspirational lawyer. That Scott would knowingly or intentionally engage in contemptuous behavior is anathema to everything that I have known – and continue to know – about Scott. While not an excuse for offensive or inappropriate conduct, from what I know, Scott's actions appear to have been committed in the heat of litigation and are significantly out of character for the man of high regard I have known so well. I know that Scott is humbled and deeply remorseful for his conduct. I do not believe that he would ever jeopardize his career of tremendous accomplishment and honor by repeating the conduct which has brought him before this Court. I ask that this Court show him its mercy.

14. I teach, among other subjects, criminal law. We spend many hours of class time to arrive at the conclusion that the criminal law, at first principle, seeks to root out and punish morally

blameworthy behavior of the sort serious enough abridge the liberty or property interest of a citizen. On this basis, the intent of the accused remains central to any analysis of morally blameworthy conduct. Based on everything I know about Scott, over my many years of working with him, I cannot fathom him intentionally, or even knowingly, setting out to show contempt for this Court, or any Court for that matter.

I declare under penalty of perjury that the foregoing is true and correct.

February 9, 2023

Date

Ronald S. Sullivan Jr.