✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED
2:10 pm, Feb 21 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| In re A. SCOTT BOLDEN. | Miscellaneous Action No. RDB-23-0040 |

### MEMORANDUM

This miscellaneous matter comes before this Court as the result of a Show Cause Order entered by Judge Griggsby on January 17, 2023, in *United States v. Marilyn J. Mosby*, LKG-22-0007, ECF 173. Specifically, that Order found that criminal defense attorney A. Scott Bolden in his representation of former Baltimore City State's Attorney Marilyn Mosby had violated Local Rule 204 by disclosing confidential responses to a jury questionnaire, and making extra-judicial statements and using profanity at a press conference on the courthouse steps. *See id.* The Order also found that Mr. Bolden had violated Local Rule 201 by submitting a filing without the signature of local counsel, as required by Local Rule 201.1(b). *Id.* Mr. Bolden has been ordered to show cause why this Court should not impose criminal contempt sanctions, make a criminal referral to the U.S. Attorney for this District, or revoke his *pro hac vice* admission. *Id.* In response, he has withdrawn his appearance, and that of his law firm, in the *Mosby* case, and has submitted a lengthy memorandum.

Mr. Bolden's violation of the Local Rules, in addition to his theatrics and profanity, are contrary to the traditions of civility and collegiality of this Court. However, they do not rise to the level of criminal contempt. As with any misconduct on the part of any attorney appearing in this Court, Local Rule 705 outlines the procedures that may or may not be implemented. Accordingly, for the reasons set forth on the record at the hearing on this matter, and the reasons that follow, the Clerk of the court is instructed to **CLOSE** this miscellaneous case.

## BACKGROUND

In January 2022, a grand jury in this District returned an indictment of then State's Attorney Marilyn Mosby for perjury and making false statements on a loan application. Indictment, ECF 1, LKG-22-0007.[1] Ms. Mosby retained Mr. Bolden, a partner in the Washington D.C. offices of Reed Smith LLP, to represent her in the case. The trial was initially scheduled to begin on September 19, 2022. *See* Am. Scheduling Order, ECF 61, LKG-22-0007.

In the lead up to trial, both parties filed a variety of pre-trial motions. Among the Government's filings was a motion for adequate disclosure of expert witness testimony and, ultimately, a motion to continue the trial date due to inadequate disclosure related to the same witness. *See* Mots., ECFs 79, 111, LKG-22-0007. Judge Griggsby held a hearing on the motions on September 14, 2022. After hearing argument from both sides, the court granted the Government's motion to continue the trial. Hr'g Tr. 82:7-84:6, ECF 134, LKG-22-0007.

After the hearing, Mr. Bolden addressed the press on the courthouse steps. He exposited at length on the latest developments in the case, expressing outrage that the trial had been continued, characterizing the hearing as "bullshit," and suggesting that the prosecution of Ms. Mosby was motivated by racial animus. *See* Lee O. Sanderlin & Alex Mann, *Judge Postpones Marilyn Mosby's Federal Trial; New Date Yet To Be Set*, Baltimore Sun (Sept. 14, 2022), https://www.baltimoresun.com/news/crime/bs-md-ci-cr-marilyn-mosbylawyers-opposepostponement-20220914-vrrnt7eegnfitlxb2bhvrjin6i-story.html. A video of the press conference was promptly published by the Baltimore Sun. *See id.*

The next day, on September 15, 2022, Judge Griggsby held a pre-trial conference to discuss the new trial schedule. *See* Hr'g Tr., ECF 135, LKG-22-0007. At the end of the hearing,

---

[1] The Government filed a superseding indictment on March 10, 2022, adding factual detail but retaining the same four counts. *See* Superseding Indictment, ECF 23, LKG-22-0007.

Mr. Bolden apologized on the record for his conduct the day before, describing his actions during the press conference as "inappropriate," assuring the court that he "own[ed] it," and apologizing "to the Court, the institution, [and] the judges that make up this great body, both federal and state." *Id.* at 70:19-71-10. The court accepted the apology. *Id.* at 71:11-12. It then issued an amended scheduling order setting the new trial date for March 2023. Am. Scheduling Order, ECF 122, LKG-22-0007.

That same day, in response to Mr. Bolden's behavior during the press conference, the Government moved for a gag order that would prohibit counsel for either party from making certain "statements to the media" "within the immediate vicinity of the courthouse." *See* Mot. at 11, ECF 120, LKG-22-0007. The defense filed a response opposing the motion two weeks later. *See* Stricken Resp., ECF 123, LKG-22-0007. Among other things, the opposition brief disclosed confidential responses to juror questionnaires, and associated juror numbers, from members of the venire that had been impaneled for the initial trial date. *Id.* at 8. The filing also failed to include the signature of an attorney licensed to practice in this court. *See id.* at 11. The court promptly struck the brief on September 30, 2022, for failing to comply with Local Rule 204's confidentiality provisions and ordered the defense to re-file its response. Order, ECF 124, LKG-22-0007. The court also noted that Local Rule 204.6 permits any violation of Rule 204 to "be treated as a contempt of court [that] may subject the violator to the disciplinary action of the Court," and ordered defense counsel to show cause "as to why the Court should not impose the penalty set forth in Local Rule 204.6 based upon the subject filing." *Id.* at 1-2 (quoting Local Rule 204.6 (D. Md. 2021)).

The court ultimately held a hearing on January 17, 2023, to address the requested gag order and whether defense counsel had violated Rule 204. After hearing from the parties, the

court granted the Government's motion and entered an order that, among other things, barred counsel from making prejudicial "statements to the news media," "extra-judicial statements" about whether racial animus motivated the prosecution, and "extra-judicial statements about the merits of [the] case"—"regardless" of where the statements were made. Order at 11-12, ECF 171, LKG-22-0007. Judge Griggsby also concluded that defense counsel had violated the local rules in four discrete ways. Specifically, it found that (1) counsel's extra-judicial statements during the September 14, 2022, press conference violated Local Rule 204; (2) counsel's use of profanity during the September 14, 2022, press conference violated Local Rule 204; (3) counsel's disclosure of confidential responses to the juror questionnaire in the defendant's September 29, 2022, filing violated Local Rule 204; and (4) counsel's filing of the September 29, 2022, response without the signature of a member of the bar of this court violated Local Rule 201. Order at 1, ECF 173, LKG-22-0007.

Having found that Mr. Bolden violated the local rules, including three violations of Local Rule 204, the court reiterated that violations of Rule 204 "may be treated as a contempt of court and may subject the violator to disciplinary action of the Court," and found further that "any finding of contempt based upon Defense Counsel Bolden's violations of Local Rule 204 would involve the imposition of criminal contempt sanctions under" *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812 (4th Cir. 2004). *Id.* at 1-2. It therefore ordered Mr. Bolden to show cause "as to why the Court should not: (1) Impose criminal contempt sanctions; (2) Make a criminal referral to the United States Attorney's Office for this District pursuant to Fed. R. Crim P. 42; and/or (3) Revoke Defense Counsel Bolden's pro hac vice admission in *United States v. Marilyn J. Mosby*, 22-cr-0007." *Id.* at 2. The court also assured Mr. Bolden that he would "be

afforded notice of the alleged violations, an opportunity to be heard, and the protections that the Constitution requires, before the Court impose[d] any criminal contempt sanctions." *Id.*

As a result of the show cause order, on January 19, 2023, Mr. Bolden and the rest of the defense team moved to withdraw from their representation of Ms. Mosby due to a potential conflict of interest. Mot. to Withdraw, ECF 174, LKG-22-0007. On January 27, 2023, the court granted the motion, appointed the Federal Public Defender to represent Ms. Mosby, and stayed its prior scheduling order. Order, ECF 188, LKG-22-0007.

On February 10, 2023, Mr. Bolden, through counsel, filed his response to the court's show cause order. Resp., ECF 12, RDB-23-0040. The response contained a lengthy and considered apology. *Id.* at 2-3. After Mr. Bolden filed his response, the matter was reassigned to the undersigned judge. Paperless Entry, Feb. 14, 2023, RDB-23-0040. This Court held a telephone conference on the public record on February 15, 2023, and in it held that Mr. Bolden's withdrawal from Ms. Mosby's case rendered the question of his *pro hac vice* status moot. *See* Paperless Entry, Feb. 15, 2023, RDB-23-0040. It also set a hearing date on the question of criminal contempt for the following week. *Id.* On February 21, 2023, the Court heard argument in support of Mr. Bolden's response to the show cause order. *See* Paperless Entry, Feb. 21, 2023, RDB-23-0040. The matter is now ripe for disposition of whether a criminal referral to the United States Attorney's Office for this District to pursue sanctions for criminal contempt against Mr. Bolden is warranted.

**ANALYSIS**

Pursuant to 18 U.S.C. § 401, this court has limited discretionary power to impose criminal sanctions for contempt of court. *United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012). The court's authority vests in three circumstances: "(1) Misbehavior of any person in its

presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; [and] (3) Disobedience or resistance to its lawful writ, process, order, *rule*, decree, or command." *See* 18 U.S.C. § 401 (emphasis added).

This case arises under § 401(3). Judge Griggsby specifically found that Mr. Bolden committed three violations of Local Rule 204, any violations of which, under the local rules, "may be treated as a contempt of court." Mem. Op. at 5, ECF 1, RDB-23-0040. She then concluded that contempt proceedings would be appropriate only were Mr. Bolden subject to criminal (as opposed to civil) contempt, because the purpose of the sanction would be "to vindicate the authority of the court and to punish the actions of the alleged contemnor" (as opposed to remedying an injury to the opposing party). *Id.* at 5-6 (quoting *Cromer*, 390 F.3d at 822). So the narrow question before the Court here is whether Mr. Bolden is subject to criminal contempt under 18 U.S.C. § 401(3).

To reiterate, under § 401(3), contempt attaches where there is "[d]isobedience or resistance to" a court's "lawful writ, process, order, [decree,] command," or, as relevant here, "rule." *See* 18 U.S.C. § 401. The ultimate question is whether the Government can prove beyond a reasonable doubt "that 'the defendant willfully violated a [rule] that was clear and left no uncertainty in the minds of those that heard it.'" *In re Gates*, 600 F.3d 333, 338 (4th Cir. 2010) (quoting *United States v. Linney*, 134 F.3d 274, 278 (4th Cir. 1998)). The elements of the offense have also been expressed as "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *See id.* at 338-39 (quoting *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (per curiam)). As always in the context of criminal contempt, the court in a § 401(3) case is "restrained by the principle that 'only the least possible power adequate to

the end proposed' should be used in contempt cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987) (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).

A person charged with committing "criminal contempt may be punished for that contempt" under the procedures outlined in Rule 42 in the Federal Rules of Criminal Procedure. Pursuant to that rule, the court may impose "direct contempt" for conduct that "occurs in the presence of the judge," or "indirect contempt" where, as here, the conduct occurs "outside of the judge's presence." *See Gates*, 600 F.3d at 337. Whereas "[d]irect contempt may be punished summarily without notice and a hearing," indirect contempt "may never be punished summarily, but rather requires adherence to more normal adversary procedures." *Id.* at 338 (quoting *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996)) (internal citations omitted). Under Rule 42, those procedures include providing "notice in open court," appointing a prosecutor, and holding "a jury trial in any case in which federal law so provides." *See* Fed. R. Crim. P. 42. Judge Griggsby assured Mr. Bolden that, should his case be referred for prosecution of criminal contempt, he would receive the procedural safeguards Rule 42 guarantees in cases of indirect contempt. *See* Order at 2, ECF 2, RDB-23-0040.

Based upon Judge Griggsby's findings that Mr. Bolden committed four violations of the local rules, this Court could find a basis for indirect criminal contempt under § 401(3) only on evidence that Mr. Bolden willfully violated a clear "rule" of that court as the term is used in § 401(3). *See Gates*, 600 F.3d at 338; Mem. Op. at 5-6, ECF 1. The Court concludes, however, that violating the local rules is not alone sufficient to trigger criminal contempt. That is because a district court's local rule is not a "rule" within the meaning of § 401(3). Thus, there is no cause for initiating criminal contempt proceedings in this case.

Although the question of whether "a standing rule or local rule of the district court" is a

"rule" for purposes of § 401(3) is an open one in the Fourth Circuit, *see United States v. Warlick*,

742 F.2d 113, 117 (4th Cir. 1984), there is clear authority that it is not. The United States Court

of Appeals for the Ninth Circuit squarely addressed the question in *United States v. Kimsey*,

holding that "local court rules . . . do not constitute 'rule[s]'" for purposes of the criminal

contempt statute. *Kimsey*, 668 F.3d 691, 699-703 (9th Cir. 2012).[2] The United States Court of

Appeals for the D.C. Circuit has endorsed the same approach. *In re Brown*, 454 F.2d 999, 1006

(D.C. Cir. 1971). The leading treatises on the topic agree. *See, e.g., Federal Criminal Rules

Handbook* Author's Commentary on Rule 42 (Laurie L. Levenson, Nov. 2022 Update) ("The

criminal contempt statute . . . does not permit convictions for criminal contempt for violations of

standing rules of court.").[3] The conclusion of these authorities follows from the meaning of the

term "rule" at the time § 401(3) was enacted, the application of the *noscitur a sociis* canon to the

provision's terms, the consequences that would follow from permitting criminal contempt to

attach to any violation of a district court's local rules, and the rule of lenity. Accordingly, the

Court is compelled to conclude that a local district court rule is not a "rule" within the meaning

---

[2] The Ninth Circuit's holding was directed at § 402, but because "the two provisions employ identical lists containing the [same] terms," it concluded that it "must construe the term 'rule' in the same manner under § 401 and § 402." *Id.* at 702-03.

[3] Prior to *Kimsey*, both the Ninth and Seventh Circuits had "assumed, without directly addressing the issue, that local court rules do qualify as such predicate" rules, but these "unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Kimsey*, 668 F.3d at 699 (citing *United States v. Marthaler*, 571 F.2d 1104, 1105 (9th Cir. 1978); and then citing *United States v. Kozel*, 908 F.2d 205, 208 (7th Cir. 1990)). Similarly, the U.S. Court of Appeals for the Fifth Circuit has characterized a respondent's "contention that a local rule is not an order" as "without merit," *United States v. Herrera*, 252 F.3d 1356 (5th Cir. 2001) (per curiam), but the opinion lacked "the same degree of analysis" as the opinions of the Ninth and D.C. Circuits, *United States v. Concord Mgmt. & Consulting LLC*, No. 18-CR-32-2, 2019 WL 7758635, at *6 n.8 (D.D.C. July 1, 2019). The opinion of Magistrate Judge Merz of the U.S. District Court for the Southern District of Ohio appears to be the leading authority engaging with, and diverging from, the analysis of the Ninth Circuit in *Kimsey*, but for the reasons discussed in this opinion this Court adopts the approach of the Ninth and D.C. Circuits.

of § 401(3) and thus a violation of a local rule cannot alone give rise to sanctions for criminal contempt.

The Court starts with the definition, in context, of the term "rule." Absent a statutory definition, the Court "look[s] to the meaning of the" statute's "terms at the time of its enactment." *See Williams v. Kincaid*, 45 F.4th 759, 766 (4th Cir. 2022) (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020)). Congress passed "the initial version of § 401" in 1911 using a list identical to the one found in § 401(3) today. *See Kimsey*, 668 F.3d at 700. At the time, the meaning of "a court's rule" was synonymous with how one might currently use the phrase "a judge's ruling"—that is, it "referred to a judge's edict in a specific case rather than general, standing court rules." *See id.* at 701. This is evident from the definitions of the term in *Black's Law Dictionary* and *The Oxford English Dictionary. Black's* defined the noun form of "rule" as an "order made by a court, at the instance of one of the parties to a suit, commanding a ministerial officer, or the opposite party, to do some act, or to show cause why some act should not be done," and the verb form as "to command or require by a rule of court; as, to rule the sheriff to return the writ, to rule the defendant to plead." *Id.* at 700 (quoting *Black's Law Dictionary* 1046 (2d ed. 1910)). Likewise, *The Oxford English Dictionary* defined a "rule" as an "order made by a judge or court with reference to a particular case only; a ruling." *Oxford English Dictionary* (3d ed. 2011). Adhering to these definitions, the term "rule" in § 401(3) is best understood as referring to a judge's individualized ruling—like the gag order Judge Griggsby ultimately entered—not the more generally applicable local rules of court.

Canons of construction corroborate this conclusion. Under the canon of *noscitur a sociis*, the "words immediately surrounding" a term in a list "cabin the contextual meaning of that term." *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion). This operates to

"avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id.* at 543 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). The term "rule" in § 401(3) comes in one such list, accompanied by companion terms which each "usually connotes a direct, situation-specific directive to a particular individual." *Kimsey*, 668 F.3d at 701. *Black's Law Dictionary* confirms that, at the time of § 401(3)'s enactment, the terms "writ," "process," "order," "decree," and "command," carried the shared attribute of referencing a particular directive in a discrete case. *See id.* at 701-02. This reinforces the conclusion that § 401(3) applies only to a judge's specific rulings, not the court's broadly applicable rules.

Construing § 401(3) to require something over and above a violation of the court's local rules is also necessary to avoid "absurd results." *See id.* at 702. It is a well-established principle of statutory construction that the Court must "avoid 'interpretations of a statute which would produce absurd results . . . if alternative interpretations consistent with the legislative purpose are available.'" *Lara-Aguilar v. Sessions*, 889 F.3d 134, 144 (4th Cir. 2018) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)); *cf. Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2462 (2019). A result is absurd if the outcome is "so gross as to shock the general moral or common sense." *Lara-Aguilar*, 889 F.3d at 144 (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)). Were this Court to interpret § 401(3) as permitting criminal contempt to attach to any violation of its rules, the statute would, in theory, license this Court to impose criminal contempt upon any attorney who omits a fax number from the bottom of a court document, *see* Local Rule 102.1(b)(i), submits a filing using a 1.25-inch margin, *see* Local Rule 101.2(b), or supplies only three copies of an arrest warrant, *see* Local Rule 103.2(a). Such a

result cannot be squared with normal moral sensibilities, *see Lara-Aguilar*, 889 F.3d at 144, and it is "exceedingly unlikely that Congress intended to authorize convictions of criminal contempt for disobeying" this genre of "ministerial" commands, *Kimsey*, 668 F.3d at 702.

A related canon, the rule of lenity, removes any remaining doubt from the analysis. *See Yates*, 574 U.S. at 547-48. Under this principle, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)). Although the rule is a canon of "last resort," *see Hosh v. Lucero*, 680 F.3d 375, 383 (4th Cir. 2012), its application here is particularly apt given the Supreme Court's guidance that "'only the least possible power adequate to the end proposed' should be used in contempt cases." *Young*, 481 U.S. at 801 (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)). The Court invokes the rule of lenity here simply to buttress its conclusion that criminal contempt may not arise, without more, from a violation of the local rules.

Local Rule 204.6, and other analogous provisions of the local rules, are not inconsistent with this interpretation. Rule 204.6 provides that "[a]ny violation of [Rule 204] may be treated as a contempt of court and may subject the violator to the disciplinary action of the Court." *See* Local Rule 204.6. Under the court's decision here, a violation of Rule 204 may still trigger sanctions for *civil* contempt. Likewise, a violation of Rule 204 *may* still warrant sanctions for criminal contempt when, for example, it occurs after the court has issued an additional individualized order to enforce its rules (for instance, if Mr. Bolden continued violating Rule 204 after Judge Griggsby entered the gag order). Mr. Bolden may also still be "subject" to "the disciplinary action of the Court" vis-a-vis its Disciplinary and Admissions Committee. Accordingly, this Court holds that 18 U.S.C. § 401 requires disobedience above and beyond a rote violation of the local rules—however distasteful—before criminal liability may attach.

## CONCLUSION

Mr. Bolden's conduct in this case has resulted in findings by Judge Griggsby that he violated the Local Rules. As a matter of law, these violations are not punishable by criminal contempt. Local Rule 705 clearly outlines the procedures that may or may not be implemented in the case of misconduct by an attorney appearing in this Court. Accordingly, the Clerk is directed to **CLOSE** this case.


____February 21, 2023____
Date

_____/s/_____
Richard D. Bennett
United States Senior District Judge